IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:06-CV-130-D

| | | |
|---|---|---|
| VERNELL B. LLOYD, Plaintiff, | ) | |
| v. | ) | **ORDER** |
| NEW HANOVER REGIONAL MEDICAL CENTER, Defendant. | ) | |

Plaintiff Vernell B. Lloyd ("plaintiff" or "Lloyd") is an African-American, registered nurse who contends that defendant New Hanover Regional Medical Center ("defendant" or "NHRMC") violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII") when NHRMC allegedly discriminated and retaliated against Lloyd by, among other things, disciplining her more severely than other similarly situated white nurses, failing to promote her because of her race, and terminating her employment. NHRMC denies Lloyd's allegations and contends that, after giving Lloyd multiple chances to improve her performance, it lawfully terminated her employment. NHRMC filed a motion for summary judgment [D.E. 45], which Lloyd opposes. As explained below, NHRMC's motion for summary judgment is granted.

I.

Plaintiff's third amended complaint contains four claims against NHRMC [D.E. 30]. First, plaintiff alleges that NHRMC engaged in race discrimination in violation of Title VII and 42 U.S.C. § 1981. Second, plaintiff alleges that NHRMC engaged in retaliation in violation of Title VII and 42 U.S.C. § 1981. Third, plaintiff alleges that NHRMC is liable under North Carolina law for negligent retention and supervision. Fourth, plaintiff alleges that NHRMC subjected her to a hostile work environment on the basis of retaliation in violation of Title VII and 42 U.S.C. § 1981.

The essential facts are as follows. NHRMC is a very large medical center in Wilmington, North Carolina. NHRMC treats thousands of patients and employs hundreds of registered nurses and other employees. As a registered nurse, Lloyd worked in various clinical units at NHRMC. In 2003 and 2004, she worked in the neuroscience unit, which is located on 6 West within NHRMC. See Davis Aff. ¶¶ 3–13. (The designation "6 West" refers to a floor and a wing within NHRMC.) In that unit, plaintiff had performance problems (id.), but she claims that her problems derived from racial bias. In May 2004, NHRMC approved plaintiff's transfer request to the cardiac medical telemetry unit on 7 South. See Bonczek Aff. ¶ 4. Plaintiff continued to have performance problems while on 7 South and received various forms of discipline and poor performance reviews. See id. ¶ 4, Exs. E, F. Plaintiff claims that these problems derived from racial bias and retaliation. In May 2007, NHRMC (through Mary Ellen Bonczek, the NHRMC Senior Vice President-Chief Nurse Executive) decided to give Lloyd a "fresh start" with new managers, new coworkers, and less demanding work in a new setting within NHRMC. See id. ¶¶ 10, 16 ,18. Thus, NHRMC transferred Lloyd to the women's care unit on 2 North. See id. ¶ 16.

On 2 North, the new managers and new coworkers knew nothing about Lloyd's prior performance and discipline problems. Although NHRMC assigned nurse-coaches to assist Lloyd with her performance on 2 North (which was standard practice for all newly assigned nurses on 2 North), Lloyd's performance problems continued, and she was repeatedly disciplined for poor performance. See Buechler Aff. ¶¶ 8–16. Plaintiff claims that her performance problems were due to racial bias. Ultimately, on July 5, 2007, Barbara Buechler (the Director of Women's and Children's Services on 2 North at NHRMC) decided to terminate plaintiff's employment and recommended to Bonczek that NHRMC terminate Lloyd due to Buechler's honest belief about Lloyd's poor performance and discipline problems on 2 North. Id. ¶ 17, Ex. D. Bonczek accepted the recommendation, and Lloyd's employment with NHRMC ended. See Bonczek Aff. ¶ 19.

In this case, Lloyd challenges not only her termination, but also many employment decisions that preceded her termination. NHRMC seeks summary judgment [D.E. 45] and filed a supporting memorandum [D.E. 46]. Plaintiff opposes the motion and filed a memorandum in opposition addressing: (1) plaintiff's race discrimination claims for her July 2007 discharge and March 2007 application for promotion; (2) plaintiff's retaliation claims for her July 2007 discharge; (3) plaintiff's claims of race discrimination and retaliation concerning various, pre-discharge discipline; and (4) plaintiff's negligent retention and supervision claim under North Carolina law [D.E. 52]. Plaintiff's memorandum does not address her retaliatory hostile work-environment claim. Id. NHRMC filed a reply to plaintiff's memorandum in opposition [D.E. 66].

II.

Before turning to NHRMC's motion for summary judgment, the court addresses three other motions. Pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiff filed a motion to strike certain portions of the affidavits of Keith Strawn, Mary Ellen Bonczek, Chad Sickle, Karen Pleva, Susan Hanna, and Barbara Buechler [D.E. 50]. She also seeks to strike an exhibit attached to Susan Hanna's affidavit. Id. ¶ 9. NHRMC submitted this evidence in support of its motion for summary judgment. Essentially, plaintiff contends that portions of the six affidavits reference individuals whom NHRMC should have identified in NHRMC's discovery responses and that Susan Hanna's affidavit attaches an exhibit that NHRMC should have produced in discovery. Id. ¶ 8.

NHRMC opposes the motion to strike [D.E. 67]. NHRMC asserts that it produced over 2,700 pages of documents in discovery, answered or objected to two sets of interrogatories, and responded to four sets of requests for production of documents. Id. at 1. Further, NHRMC notes that plaintiff filed her motion to strike on the same date that she filed her opposition to NHRMC's motion for summary judgment. Id. NHRMC then argues that the text of Rule 37 provides no relief for plaintiff and that its discovery responses were proper. Id. at 2–6.

Under Rule 37, a court has the power to enter an order striking a pleading or parts thereof as

a sanction against a party where a party fails to (1) obey a court order related to discovery or (2) serve answers or objections to interrogatories or requests for production. See Fed. R. Civ. P. 37(b)(2), 37(d). After reviewing the record, the court finds that NHRMC did not fail to obey a court order related to discovery and that NHRMC properly answered or objected to plaintiff's discovery requests. Moreover, the court also finds that plaintiff did not specifically ask for most of the information that she now seeks to strike and that NHRMC either produced or properly objected to the balance. See Def.'s Opp. to Pl.'s Mot. to Strike 4–6. Accordingly, plaintiff's motion to strike is denied.

Second, plaintiff filed a motion for a brief extension of time to file an executed version of the declaration of Shirley Dailey [D.E. 58]. See Fed. R. Civ. P. 56(f). According to plaintiff's counsel, plaintiff included an unsigned version of the Dailey declaration with her opposition to defendant's motion for summary judgment. Due to logistical issues described in plaintiff's memorandum in support of her motion for an extension of time, Dailey failed to provide the executed version of her declaration to plaintiff's counsel in time for filing on May 21, 2008 [D.E. 59]. The court grants plaintiff's motion for an extension of time [D.E. 58]. The Clerk is directed to file the signed version of the Dailey declaration [D.E. 59-4].

Third, NHRMC filed a motion to strike the declarations of Shirley Dailey, Vernell Lloyd, and Wanda Ratliffe and portions of plaintiff's deposition testimony [D.E. 64]. Dailey worked at NHRMC as a certified nursing assistant from approximately November 2001 through June 2, 2006. See Dailey Decl. ¶ 1. Ratliffe worked at NHRMC as a registered nurse until 1996. Ratliffe Decl. ¶ 1. She then retired, but returned to NHRMC in May 2005 and worked there until April 10, 2008. Id. Plaintiff filed a memorandum in opposition to NHRMC's motion to strike [D.E. 70].

As for Shirley Dailey's declaration, the court finds that portions of Dailey's declaration fail to comply with Rule 56(e) of the Federal Rules of Civil Procedure because the declaration includes inadmissible hearsay. See Dailey Decl. ¶¶ 3, 5, 7–11, 15. To the extent that plaintiff offers the

hearsay in Dailey's declaration for the truth of the matter asserted, NHRMC's motion to strike is granted. See Fed. R. Civ. P. 56(e)(1). Moreover, to the extent that plaintiff seeks to rely on assertions in the Dailey declaration that are vague and not tied to a specific time period relevant to the claims in the case, the court grants the motion to strike. See id.; cf. Dailey Decl. ¶¶ 6, 14.

As for Lloyd's declaration and a portion of Lloyd's deposition testimony, the court will not consider the statements in Lloyd's declaration or deposition testimony that are not relevant to the claims remaining in the case or that are inadmissible hearsay (including plaintiff's private journal notes that she admittedly never shared with anyone at NHRMC). See Fed. R. Civ. P. 56(e)(1).

Finally, as for Wanda Ratliffe's declaration, plaintiff did not disclose Ratliffe in her initial disclosures or in response to defendant's discovery requests. Although plaintiff's counsel claims that she did not discover Ratliffe until approximately May 21, 2008, the discovery deadline was March 28, 2008, and the discovery period was from April 30, 2007, through March 28, 2008 [D.E. 28, 40]. Plaintiff's belated disclosure of Ratliffe prejudiced NHRMC in that it was unable to depose Ratliffe. In light of the failure to act diligently and to timely disclose Ratliffe, the court strikes Ratliffe's declaration. See, e.g., Smith v. Botsford Gen. Hosp., 419 F.3d 513, 516–17 (6th Cir. 2005); Hartford Cas. Ins. Co. v. MCJ Clothiers, Inc., 54 Fed. Appx. 384, 388 (4th Cir. 2002) (per curiam) (unpublished); Quality Built Homes, Inc. v. Village of Pinehurst, No. 1:06-CV-1028, 2008 WL 3503149, at *5 (M.D.N.C. Aug. 11, 2008) (unpublished); Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 631–32 (E.D.N.C. 2008); Johnson v. UPS, Inc., 236 F.R.D. 376, 377–79 (E.D. Tenn. 2006).

III.

A.

In considering NHRMC's motion for summary judgment, the court applies the familiar summary judgment standard and views the evidence in the light most favorable to plaintiff. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 127 S. Ct. 1769, 1774 (2007); Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

First, the court addresses plaintiff's claim that NHRMC terminated her employment in retaliation for various forms of protected activity that preceded her July 2007 termination. Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 provides a remedy for a person who claims race discrimination concerning a contract or retaliation in response to complaining about a violation of 42 U.S.C. § 1981. See, e.g., CBOCS W., Inc. v. Humphries, 128 S. Ct. 1951, 1954–55 (2008). Likewise, Title VII provides a remedy for a person who engages in protected activity under Title VII and thereafter suffers unlawful retaliation. See, e.g., 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006); Holland v. Wash. Homes, Inc., 487 F.3d 208, 217–18 (4th Cir. 2007), cert. denied, 128 S. Ct. 955 (2008); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004).

In this case, plaintiff alleges that, after she engaged in various forms of protected activity, NHRMC fired her in retaliation and thereby violated Title VII and section 1981. Plaintiff lacks direct evidence that NHRMC retaliated against her in violation of Title VII or section 1981; therefore, she proceeds under the burden-shifting framework first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas framework applies in Title VII and section 1981 cases. See, e.g., Holland, 487 F.3d at 218; Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 213–14 (4th Cir. 2007); Price, 380 F.3d at 212; Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th Cir. 2001).

Under McDonnell Douglas, a plaintiff first must establish a prima facie case of retaliation. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–55 (1981); Holland, 487 F.3d at 218; Spriggs, 242 F.3d at 190. If a

plaintiff establishes a prima facie case, then the burden of production shifts to defendant to produce evidence that defendant took the adverse employment action for a legitimate, nonretaliatory reason. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506–07; Burdine, 450 U.S. at 253–54; Holland, 487 F.3d at 218; Spriggs, 242 F.3d at 190. If the defendant meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that defendant's stated reason for taking the adverse employment action was a pretext (i.e., a sham) for retaliation. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr., 509 U.S. at 507–08; Holland, 487 F.3d at 218; Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took an action against her which a reasonable employee would find materially adverse; and (3) the employer took the materially adverse employment action because of the protected activity. See, e.g., Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67–70; Holland, 487 F.3d at 218; Price, 380 F.3d at 212; Bryant, 333 F.3d at 543; Spriggs, 242 F.3d at 190. A plaintiff cannot prove causation without showing that the decisionmaker actually had knowledge of the protected activity at the time the decisionmaker decided to take the adverse employment action. See, e.g., Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001); Gibson v. Old Town Trolley Tours of Wash., D.C., Inc., 160 F.3d 177, 181–82 (4th Cir. 1998); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); Pittman v. Hunt Constr. Group, 564 F. Supp. 2d 531, 535 (E.D.N.C. 2008), aff'd, No. 08-1817, 2009 WL 136889 (4th Cir. Jan. 21, 2009) (per curiam) (unpublished).

NHRMC contends that plaintiff failed to establish a prima facie case because she failed to establish causation. See Def.'s Mem. in Supp. of Def.'s Mot. For Summ. J. 17–18 [hereinafter "Def.'s Mem."]. In making this argument, NHRMC contends that Unit Director Buechler was the decisionmaker who terminated plaintiff's employment in July 2007, and that Buechler had no

knowledge of plaintiff's various protected activities (including her EEOC charges, her federal lawsuit, or various grievances). See id. at 18 (citing Buechler Aff. ¶ 6). Moreover, in making this argument, NHRMC appropriately focuses on the knowledge (or lack of knowledge) of the decisonmaker. See, e.g., Hill, 354 F.3d at 286; Hooven-Lewis, 249 F.3d at 278; Pittman, 564 F. Supp. 2d at 535. Specifically, Buechler testified that she lacked knowledge about plaintiff's federal lawsuit, EEOC charges, or grievances. See Buechler Aff. ¶¶ 6–7. Likewise, plaintiff's direct supervisor on 2 North (Nurse Manager Whitley) and the nurse coaches on 2 North that coached plaintiff on 2 North after she began her "fresh start" in May 2007, all testified to lacking any knowledge of plaintiff's protected activity. See Whitley Aff. ¶ 6; Kavanaugh Aff. ¶ 5; Geddie Aff. ¶ 5; Dockstater Aff. ¶ 4.

In response, plaintiff contends that she referenced her federal lawsuit in the grievance that she gave to Buechler following her May 30, 2007 written discipline on 2 North. See Pl.'s Dep. II, at 96–97. Further, she contends that Bonczek approved the termination and that Bonczek knew about her protected activity. Plaintiff also suggests that her managers were aware of verbal complaints of race discrimination that plaintiff made. Thus, plaintiff argues that NHRMC knew about her protected activity.

The court need not resolve this dispute about plaintiff's prima facie case. Even if the court assumes that Buechler knew about a portion of plaintiff's protected activity via the grievance and assumes that plaintiff established a prima facie case, NHRMC articulated a legitimate, nondiscriminatory reason for Lloyd's discharge: Buechler's honest belief concerning Lloyd's discipline and performance problems on 2 North. Thus, Lloyd must demonstrate that there is a genuine issue of material fact as to pretext. Plaintiff may prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). Stated succinctly, plaintiff must demonstrate that there is a genuine issue

of material fact concerning whether Buechler honestly believed that plaintiff's work performance on 2 North was unsatisfactory. See, e.g., Holland, 487 F.3d at 217–18; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Shepherd v. Coastal Cmty. Action, Inc., ___ F. Supp. 2d ___, No. 4:07-CV-174-D, 2009 WL 229957, at *3 n.1 (E.D.N.C. Jan. 30, 2009); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 608 (E.D.N.C. 2006).

As explained below, even when the evidence is viewed in the light most favorable to plaintiff, there is no genuine issue of material fact as to pretext. As mentioned, in early May 2007, Bonczek decided to transfer Lloyd to 2 North and give Lloyd a "fresh start" with new managers, new coworkers, and work that was less demanding than the work in the cardiac medical telemetry unit. See Bonczek Aff. ¶ 16. Bonczek is the NHRMC's Senior Vice President-Chief Nurse Executive and is responsible for overseeing the hundreds of nurses who work at NHRMC. See id. ¶ 1. Because Lloyd was disciplined in 2006 on 7 South, Bonczek's "fresh start" decision not only gave Lloyd another opportunity to improve her performance, but also reduced Lloyd's risk of job termination under NHRMC's disciplinary policy. See id. ¶ 16.

NHRMC is a large, busy medical center, and Bonczek did not advise anyone within 2 North about Lloyd's prior performance or discipline problems or her various forms of protected activity. See Bonczek Aff. ¶ 20; accord Pleva Aff. ¶ 19; Buechler Aff. ¶¶ 6–7; Whitley Aff. ¶ 6; Kavanaugh Aff. ¶ 5; Geddie Aff. ¶ 5; Dockstater Aff. ¶ 4. Buechler was the Unit Director on 2 North during the time period between May 2007 and July 2007, and Whitley was the Nurse Manager on 2 North during that time period. See Buechler Aff. ¶¶ 1–5; Whitley Aff. ¶ 1. Lloyd reported to Whitley. See Bonczek Aff. ¶ 18; Whitley Aff. ¶¶ 4–5. Whitley reported to Buechler. See id. ¶ 1. Buechler reported to Bonczek. See Buechler Aff. ¶ 1.

Under NHRMC policy, each nurse goes through an orientation period when the nurse joins a new unit. See Buechler Aff. ¶ 8; Whitley Aff. ¶ 8; Bonczek Aff. ¶ 18. During the orientation period, the nurse works with one or more registered nurse "coaches" who mentor the nurse and

monitor the nurse's work in the new unit. See Buechler Aff. ¶ 8; Whitley Aff. ¶ 8; Bonczek Aff. ¶ 18. The coach provides feedback to the new nurse and the nurse's supervisors. See Buechler Aff. ¶ 8; Whitley Aff. ¶ 10. The coach also creates contemporaneous notes concerning the nurse's work. See Buechler Aff. ¶ 8; Whitley Aff. ¶ 10; Geddie Aff. ¶ 4.

On May 3, 2007, Buechler and Whitley met with plaintiff, welcomed plaintiff to 2 North, and introduced her to her coach, Beth Geddie. See Buechler Aff. ¶ 10; Whitley Aff. ¶¶ 5, 10, 12; Geddie Aff. ¶ 5. After plaintiff began working on 2 North, Geddie became concerned about plaintiff's time management, medical charting, and communication with other nurses. See Geddie Aff. ¶¶ 8–9. Geddie documented her performance concerns. See id. ¶¶ 7, 9. On May 17, 2007, Whitley and Geddie met with plaintiff to discuss their concerns about her performance. See id. ¶ 10.

Unfortunately, plaintiff's performance problems continued. On May 25, 2007, plaintiff's received her first discipline on 2 North—a verbal warning. See Buechler Aff. ¶ 13; Whitley Aff. ¶ 13. Buechler issued the verbal warning "because [plaintiff's] coach Beth Geddie and Ms. Whitley had observed multiple nurse practice problems involving Ms. Lloyd." Buechler Aff. ¶ 13; see Geddie Aff. ¶¶ 6–11. Buechler and Whitley met with Lloyd to discuss the warning, and Buechler recorded the performance reasons that led to the discipline as:

> [d]elayed pain reassessments; delay in completing physician's orders; delay in discharging patients; poor communication with physicians; delay in charting; and tardies, beginning shift report late.

Buechler Aff. ¶ 13 (quoting Ex. A, at 121).

Notwithstanding this verbal warning, plaintiff's performance problems continued. On May 30, 2007, Buechler gave plaintiff her first written discipline on 2 North. See Buechler Aff. ¶ 14. Plaintiff received this discipline because Buechler reviewed Geddie's notes and considered reports from Whitley and concluded that plaintiff continued to demonstrate performance problems that "created a risk of seriously compromising patient care." Id.; see Geddie Aff. ¶¶ 6–11; Whitley Aff. ¶¶ 10–11, 14–16. Buechler documented plaintiff's performance problems as follows:

> [Lloyd] continues to demonstrate problems with her practice that compromise safe patient care and accurate documentation. During the shift on 5/29/2007 [Lloyd] started with 2 patients and received 3 post-op patients during her shift at 0930, 1100, and 1750. Over the last 2 shifts the following issues have been identified:
>
> - IVF not documented or incorrectly documented.
> - Multiple missed medications.
> - Multiple incidents of not providing appropriate patient education.
> - Missed chart checks.
> - MD order requested patient's MR from a previous facility to enhance care delivery decision. [Lloyd] did not complete order, therefore chart was not available for MD review.
> - Delay in charting. First documentation of the day occurred at . . . 4pm for her shift 5/30/2007.
> - No documentation of a blood transfusion for patient on 5/29/2007 with missed pre-medication prior to the second unit of blood.

Buechler Aff. ¶ 14 (quoting Ex. B, at 125).

Geddie went on vacation in early June, and Tammy Kavanaugh became plaintiff's coach on June 7, 2007. See Buechler Aff. ¶ 10; Whitley Aff. ¶ 10, Kavanaugh Aff. ¶ 5. At plaintiff's request, Buechler made Kavanaugh plaintiff's coach for the balance of plaintiff's orientation on 2 North. See Buechler Aff. ¶ 10; Kavanaugh Aff. ¶ 6.

After beginning to serve as plaintiff's coach, Kavanaugh observed plaintiff having performance problems. See Kavanaugh Aff. ¶¶ 7–9. Kavanaugh reported her concerns to Whitley. See id. ¶¶ 4, 7; Whitley Aff. ¶ 10. On June 12, 2007, Buechler gave plaintiff a second written discipline because plaintiff continued to demonstrate problems with her patient care practice that "had the risk of seriously compromising patient care." Buechler Aff. ¶ 16; see Whitley Aff. ¶¶ 15–17; Kavanaugh Aff. ¶¶ 7–9. As part of this disciplinary action, plaintiff was suspended from work for three days. See Buechler Aff. ¶ 16, Ex. C., at 129.

Plaintiff returned from her three-day suspension, but her performance did not improve. See Whitley Aff. ¶ 18. On July 5, 2007, Buechler gave plaintiff her third written discipline. See Buechler Aff. ¶ 17, Ex. D, at 380. The discipline detailed at great length Buechler's beliefs about plaintiff's multiple and serious performance deficiencies on 2 North. See id. Buechler again relied

on reports from her subordinates. See id. Buechler's lengthy memorandum concerning a host of performance problems that Whitley, Geddie, and Kavanaugh had reported while Lloyd worked on 2 North concluded:

> I believe [Lloyd] is unsafe to practice as a Registered Nurse at NHRMC and recommend termination. Her continued employment compromises patient safety. [Lloyd] does not demonstrate ownership of these practice issues and does not believe improvement is necessary.

Id.

Bonczek received Buechler's recommendation to terminate plaintiff's employment. Bonczek then reviewed the post-"fresh start" discipline that plaintiff had received on 2 North. See Bonczek Aff. ¶ 19. Based solely on plaintiff's discipline and performance problems on 2 North, Bonczek approved Buechler's decision to terminate plaintiff's employment. See id.

In opposition to the conclusion that Buechler decided to terminate plaintiff's employment on July 5, 2007, due to Buechler's honest belief about plaintiff's discipline and performance problems on 2 North, plaintiff cites various evidence. First, plaintiff intimates that NHRMC employees are being untruthful about the "real" reason for her termination, but concedes that she has no proof. Cf. Pl.'s Dep. I., at 77, 98–101. Plaintiff's "speculation and conjecture are not sufficient to defeat summary judgment." Pittman, 564 F. Supp. 2d at 536 (citing Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817–18 (4th Cir. 1995); Choe v. Smith, No. 94-2143, 1995 WL 541675, at *2 (4th Cir. Sept. 13, 1995) (per curiam) (unpublished)). No rational jury could credit plaintiff's intuition in the face of the overwhelming evidence concerning her poor performance on 2 North and Buechler's honest belief about plaintiff's poor performance.

Second, plaintiff cites her own subjective view of her performance on 2 North. Plaintiff's subjective view of her performance, however, is not sufficient to create a genuine issue of material fact as to pretext. See, e.g., Holland, 487 F.3d at 217–18; Williams v. Cerberonics, Inc., 871 F.2d 452, 459 (4th Cir. 1989); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Moreover, plaintiff admitted in her deposition that she had problems performing her work on 2 North and that the work

was overwhelming and involved too many tasks. See, e.g., Pl.'s Dep. I, at 107, 121, 129–31, 166, 179–81. Notably, even if the court considered the Dailey and Ratliffe declarations, those declarations do not cover the time period in which plaintiff worked on 2 North. Cf. Dailey Decl. ¶ 1; Ratliffe Decl. ¶¶ 1–2. Even if they did, the subjective opinion of plaintiff's coworkers concerning their opinion of plaintiff's performance would not be sufficient to create a genuine issue of material fact as to pretext. See, e.g., King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).

Finally, this court does not sit to decide whether Buechler's honest belief concerning plaintiff's performance and discipline problems warranted discharge or some lesser sanction. See, e.g., Holland, 487 F.3d at 217–18; Hux, 451 F.3d at 315; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the issue is whether plaintiff has raised a genuine issue of material fact as to pretext within the meaning of Reeves and its Fourth Circuit progeny. Because plaintiff failed to raise a genuine issue of material fact concerning such pretext, NHRMC is entitled to summary judgment on plaintiff's retaliatory discharge claim. See, e.g., Holland, 487 F.3d at 217–18; Brockman v. Snow, 217 Fed. Appx. 201, 207–08 (4th Cir. 2007) (unpublished); Cox v. Rumsfeld, 190 Fed. Appx. 329, 331–33 (4th Cir. 2006) (per curiam) (unpublished); Price, 380 F.3d at 212–18; Brackman v. Fauquier County, 72 Fed. Appx. 887, 895 (4th Cir. 2003) (per curiam) (unpublished); King, 328 F.3d at 150–54; Rowe v. Marley Co., 233 F.3d 825, 830–31 (4th Cir. 2000); Hawkins, 203 F.3d at 279–80; cf. Depaoli v. Vacation Sales Assocs., L.L.C., 489 F.3d 615, 619–20 (4th Cir. 2007); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 407–09 (4th Cir. 2005).

B.

Plaintiff alleges that NHRMC terminated her employment due to her race in violation of Title VII and 42 U.S.C. § 1981. Plaintiff concedes that she has no direct evidence of race discrimination; therefore, she proceeds under the McDonnell Douglas framework. See, e.g., Reeves, 530 U.S. at 142–43; Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513–14 (4th Cir. 2006); Hill, 354 F.3d at 284–85. In order to establish a prima facie case of wrongful termination under Title VII or section

1981, plaintiff must ordinarily establish that: (1) she is a member of a protected class; (2) she was terminated; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time she was terminated; and (4) that the position was filled by a similarly qualified applicant outside the protected class. See, e.g., King, 328 F.3d at 149; cf. Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir. 2005).

NHRMC argues that plaintiff has failed to establish a prima facie case of race discrimination because she was not performing her job duties on 2 North at a level that met her employer's legitimate expectations at the time she was terminated. NHRMC cites the previously discussed performance and discipline problems that marred Lloyd's tenure on 2 North.

In opposition, plaintiff cites her own view of her performance during her entire tenure at NHRMC. However, plaintiff's testimony about her view of her performance "cannot establish a genuine issue as to whether [Lloyd] was meeting [NHRMC's] expectations." King, 328 F.3d at 149. It is the view of the decisionmaker that counts. See Holland, 487 F.3d at 217–18; Williams, 871 F.2d at 459; Smith, 618 F.2d at 1067. Further, Lloyd offers no competent evidence to raise a genuine issue of material fact as to her performance on 2 North from May 2007 to July 2007, or as to Buechler's honest belief about the performance. Cf. King, 328 F.3d at 149–50. Moreover, plaintiff's discussion of her performance during her entire tenure at NHRMC does not help her. See Warch, 435 F.3d at 516–17. The focus must be on her performance on 2 North and the decisionmaker's view of that performance. Id. at 516–18. In sum, plaintiff has failed to establish a prima facie case, and NHRMC is entitled to summary judgment on her racial discharge claim.

Alternatively, even if the court assumes (without deciding) that plaintiff has met her prima facie case, NHRMC has articulated a legitimate nondiscriminatory reason for plaintiff's discharge: Buechler's honest belief concerning plaintiff's discipline and performance problems on 2 North. See, e.g., Holland, 487 F.3d at 217–18; see also Amirmokri v. Abraham, 266 Fed. Appx. 274, 280–81 (4th Cir.) (unpublished), cert. denied, 129 S. Ct. 259 (2008). Thus, under the McDonnell

Douglas framework, plaintiff must come forward with sufficient evidence from which a rational factfinder could find that NHRMC's proffered nondiscriminatory reason was a pretext designated to mask race discrimination. See, e.g., Reeves, 530 U.S. at 142–43; Holland, 487 F.3d at 217–18; Hux, 451 F.3d at 315; King, 328 F.3d at 150–154.

As mentioned, plaintiff may prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race] discrimination." Mereish, 359 F.3d at 336 (quotation omitted). Plaintiff, however, has presented no evidence from which a rational factfinder could find that NHRMC's decision to terminate her employment in July 2007 was a pretext designed to mask race discrimination. Indeed, just as plaintiff's evidence failed to raise a genuine issue as to pretext on her retaliation-discharge claim, it also fails as to her racial-discharge claim. Accordingly, NHRMC is entitled to summary judgment on her racial-discharge claim.

C.

Plaintiff alleges that NHRMC failed to promote her to Night Coordinator on 7 South in March 2007, due to her race. Pl.'s Dep. II, at 137. Again, plaintiff has no direct evidence of race discrimination and proceeds under the McDonnell Douglas framework. To establish a prima facie case of failure to promote based on race, plaintiff must show: (1) that she belongs to a protected class; (2) that she applied for the position in question; (3) that she was qualified for the job; and (4) that the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. See, e.g., Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 n.6 (4th Cir. 2005); Bryant, 333 F.3d at 544–45; Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998); McDougal-Wilson, 427 F. Supp. 2d at 606.

Plaintiff has failed to establish a prima facie case because she was not qualified for the Night Coordinator job. NHRMC's written policy limits those who are qualified to receive a promotion to current employees who have "not been disciplined under the formal disciplinary process during the

past 12 months." Strawn Aff. ¶ 6, Ex. E; Hanna Aff. ¶ 27, Ex. H. Plaintiff, however, received written discipline within the twelve months prior to her March 2007 promotion application, including written discipline on December 15, 2006. See Hanna Aff. ¶ 27, Exs. E, G. Moreover, plaintiff testified that her December 15, 2006 discipline was not based on her race. See Pl.'s Dep. II, at 169. Accordingly, under the NHRMC policy, plaintiff was not qualified for the March 2007 promotion. See, e.g., Campbell v. Univ. of Akron, 211 Fed. Appx. 333, 348 (6th Cir. 2006) (unpublished); Witherspoon v. Norfolk S. Corp., No. 5:06-CV-469-D, 2008 WL 516737, at *8 (E.D.N.C. Feb. 25, 2008) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 607–08. Thus, plaintiff has failed to establish the third requirement of her prima facie case, and NHRMC is entitled to summary judgment on plaintiff's failure-to-promote claim.

Alternatively, even if plaintiff did establish a prima facie case, NHRMC produced a legitimate nondiscriminatory reason for not promoting plaintiff in March 2007: the twelve-month discipline rule. See Hanna Aff. ¶ 27, Ex. H. Further, the evidence also establishes that NHRMC believed that the nurse selected—Sally Sableski—was better qualified due to job performance and experience. See id. ¶ 28. An employer's good-faith belief that another candidate is better qualified due to job performance and experience is a legitimate nondiscriminatory reason for not promoting someone. See, e.g., Hux, 451 F.3d at 315; Diamond, 416 F.3d at 319–20; Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996); McDougal-Wilson, 427 F. Supp. 2d at 608. Thus, plaintiff has failed to raise a genuine issue of material fact as to pretext, and NHRMC is entitled to summary judgment on plaintiff's failure-to-promote claim.

D.

Plaintiff alleges that various NHRMC decisionmakers disciplined her before her discharge for engaging in protected activity and due to her race. It appears that plaintiff is challenging her 7 South October 2005 written discipline for insubordination, her 7 South January 25, 2006 verbal warning for insubordination, her 7 South July 7, 2006 written discipline for two incidents of

insubordination (which Bonczek reduced to a verbal warning), and her 2 North progressive discipline between May 2007 and July 2007. See Def.'s Mem. 19 n.9; Pleva Aff. ¶¶ 9, 12, 13, Exs. C, E, F; cf. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. 21–23 (failing to specify which discipline plaintiff is challenging).

Plaintiff lacks direct evidence of unlawful discrimination and proceeds under the McDonnell Douglas framework. To establish a prima facie case of discrimination in enforcing employee discipline, a plaintiff must show: (1) that she is a member of a protected class; (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of an employee outside the protected class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees outside the protected class. See, e.g., Taylor v. Va. Union Univ., 193 F.3d 219, 234 (4th Cir. 1999) (en banc), abrogated in part on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003); Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985); see also Edwards v. Newport News Shipbuilding & Dry Dock Co., No. 98-1338, 1998 WL 841567, at *2 (4th Cir. Dec. 7, 1998) (per curiam) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 609.

In evaluating a discriminatory discipline claim, NHRMC argues that a court first must determine that the discipline at issue constitutes adverse employment action. After all, "employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); see Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 650–52 (4th Cir. 2002). "Adverse employment action is any . . . act . . . if, but only if, that act . . . results in an adverse effect on the terms, conditions, or benefits of employment." Von Gunten v. Maryland, 243 F.3d 855, 866 (4th Cir. 2001), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see Burlington N. & Santa Fe Ry. Co., 548 U.S. at 67; McDougal-Wilson, 427 F. Supp. 2d at 609.

In making this argument, NHRMC contends that plaintiff's discriminatory discipline claim

fails because the discipline that she challenges does not constitute adverse employment action. Specifically, plaintiff suffered no loss in job status, job responsibilities, or pay from any of the discipline that she received on 7 South. See Strawn Aff. ¶¶ 15–19. Thus, according to NHRMC, plaintiff failed to establish adverse employment action as to the October 2005 discipline, the January 2006 verbal warning, or the July 2006 written discipline reduced to a verbal warning. See McDougal-Wilson, 427 F. Supp. 2d at 609–10 (discussing Fourth Circuit precedent in context of discriminatory-discipline claims). NHRMC contends that the same conclusion applies to the progressive discipline on 2 North. See id.; Strawn Aff ¶ 24.

The court need not address NHRMC's adverse employment action argument. Even if plaintiff has shown adverse employment action in connection with the challenged discipline, plaintiff's claim still fails. In order to establish a prima facie case of discriminatory discipline, a plaintiff must show that she was similarly situated with a comparator who received less severe discipline from the same supervisor for essentially the same conduct. See, e.g., Taylor, 193 F.3d at 234; Cook, 988 F.2d at 511; Moore, 754 F.2d at 1105–06; see also Crawford v. Ind. Harbor Belt R.R. Co., 461 F.3d 844, 846–47 (7th Cir. 2006); Brasic v. Heinemann's Inc., 121 F.3d 281, 287 (7th Cir. 1997); Witherspoon, 2008 WL 516737, at *5–*6; McDougal-Wilson, 427 F. Supp. 2d at 610; Holtz v. Jefferson Smurfit Corp., 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006). As for the challenged discipline, the court has reviewed the entire record and concludes that plaintiff has failed to make such a showing. See, e.g., Buechler Aff. ¶ 19; Whitley Aff. ¶ 16; Kavanaugh Aff. ¶ 10; Geddie Aff. ¶ 12; Strawn Aff. ¶¶ 14–27; Bonczek Aff. ¶¶ 9–23; Pleva Aff. ¶¶ 9–20; Hanna Aff. ¶¶ 6–26. Finally, and alternatively, even if plaintiff could establish a prima facie case of discriminatory discipline, NHRMC articulated a legitimate nondiscriminatory reason for the challenged discipline, and plaintiff has failed to raise a genuine issue of material fact as to pretext. Thus, NHRMC is entitled to summary judgment as to plaintiff's discriminatory-discipline claim.

E.

Plaintiff alleges that NHRMC is liable under North Carolina law for negligent retention and supervision arising from conduct that allegedly violated Title VII and 42 U.S.C. § 1981. See Third Am. Compl. ¶¶ 24–29. In order to state a claim for negligent supervision and retention against an employer under North Carolina law, a plaintiff "must prove that the incompetent employee committed a tortious act resulting in injury to [the] plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." Smith v. Privette, 128 N.C. App. 490, 494–95, 495 S.E.2d 395, 398 (1998) (quotation omitted); see Smith v. First Union Nat'l Bank, 202 F.3d 234, 249–50 (4th Cir. 2000).

NHRMC argues that to the extent that plaintiff relies on alleged Title VII or section 1981 violations as the underlying tortious act, the Fourth Circuit has interpreted North Carolina to require a common law tort to serve as the "tortious act" for a negligent retention and supervision claim and that a Title VII or section 1981 violation does not qualify. See McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003); Rathbone v. Haywood County, No. 1:08-CV-117, 2008 WL 2789770, at *3 (W.D.N.C. July 17, 2008) (unpublished). The court, however, need not address NHRMC's argument. Even if a Title VII or section 1981 violation does qualify as a tortious act under North Carolina law for purposes of a negligent retention and supervision claim, plaintiff's claim would still fail because her Title VII and section 1981 claims fail. Alternatively, the court has examined the entire record, and plaintiff's evidence does not include the requisite "tortious act." See, e.g., Pl.'s Dep. II, at 11, 14–15, 48–49, 60–61, 63, 75, 95–97, 148–49, 206–07, 209, 211–12. Thus, NHRMC is entitled to summary judgment as to plaintiff's negligent retention and supervision claim under North Carolina law.

F.

Finally, plaintiff's third amended complaint alleges a claim that NHRMC subjected her to a hostile work environment on the basis of retaliation in violation of Title VII and 42 U.S.C. § 1981.

See Third Am. Compl. ¶¶ 30–32. NHRMC briefed this claim in its memorandum in support of its motion for summary judgment. See Def.'s Mem. 26. Plaintiff's opposition did not address this claim or NHRMC's motion for summary judgment as to this claim.

The court concludes that plaintiff has abandoned this claim and grants NHRMC's motion for summary judgment as to this claim. Alternatively, assuming that plaintiff's retaliatory hostile work environment claim states a claim upon which relief can be granted under Title VII and section 1981,[1] plaintiff initially would have to show that NHRMC (through its agents) created a hostile work environment based on her protected activity and that the alleged retaliatory harassment was sufficiently severe or pervasive to create an abusive work environment. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001) (per curiam); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993); Ziskie v. Mineta, 547 F.3d 220, 224–25 (4th Cir. 2008); Baqir v. Principi, 434 F.3d 733, 745–47 (4th Cir. 2006); Ochletree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc).

The court has reviewed the entire record. No competent evidence suggests that anyone at NHRMC harassed plaintiff because of her protected activity or that any conduct was sufficiently severe or pervasive to create an abusive work environment under Title VII or section 1981. See, e.g., Pl.'s Dep. II, at 11, 14–15, 48–49, 60–61, 63, 75, 95–97, 148–49, 206–07, 209, 211–12. Accordingly, NHRMC is entitled to summary judgment on this claim.

IV.

As explained above, plaintiff's motion to strike [D.E. 50] is DENIED, and plaintiff's motion for extension of time to file a declaration in support of plaintiff's memorandum in opposition to defendant's motion for summary judgment [D.E. 58] is GRANTED. The Clerk is directed to accept the executed Dailey declaration [D.E. 59-4] for filing. Further, defendant's motion to strike the declarations of Shirley Dailey, Vernell Lloyd, and Wanda Ratliffe, and portions of plaintiff's

---

[1] Cf. Fox v. Gen. Motors Corp., 247 F.3d 169, 175–76 (4th Cir. 2001).

testimony [D.E. 64] is GRANTED IN PART and DENIED IN PART. Finally, defendant's motion for summary judgment [D.E. 45] is GRANTED. The Clerk is DIRECTED to close this case.

SO ORDERED. This 31 day of March 2009.

JAMES C. DEVER III
United States District Judge